**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**HAVRE AERIE #166 EAGLES**,

        Debtor.

Case No.  **12-60679-11**

**HAVRE AERIE #166 EAGLES**,

        Plaintiff.

-vs-

**KAYCEE GROVEN**,

        Defendant.

Adv No.  **12-00027**

**MEMORANDUM OF DECISION**

At Butte in said District this 14th day of March, 2013.

In this adversary proceeding the Plaintiff/Debtor seeks to avoid, under 11 U.S.C. § 547(b), a judicial lien obtained by the Defendant Kaycee Groven ("Groven") and to have Groven's claim declared wholly unsecured. The parties submitted an agreed Pretrial Order (Docket No. 22) which was approved by this Court. Trial of this adversary proceeding was held at Great Falls on December 7, 2012, at the conclusion of which the Court took this matter under advisement. After review of the record and applicable law, for the reasons set forth below a

1

separate Order and Judgment shall be entered against Groven avoiding her judicial lien as a

preference under § 547(b) and allowing Groven's claim as an unsecured nonpriority claim.

The Debtor was represented at trial[1] by attorney Steven M. Johnson of Church, Harris,

Johnson & Williams, P.C., of Great Falls.  Groven was represented by attorney Philip Alder

Hohenlohe of Hohenlohe Jones PLLP of Helena.  Debtor's general manager Tom Farnham

("Farnham") testified, along with Debtor's accountant James C. Kato ("Kato") and consultant

J.T. Korkow ("Korkow").  Debtor's Exhibits ("Ex.") 1, 2, 3, 4, 5, 7, 8, 11, and 16 were admitted

into evidence without objection.  Groven called no witnesses and offered no exhibits.

## FACTS

The approved Pretrial Order (Dkt. 22) sets forth the following agreed facts:

> 1. The Havre Eagles Club is a not-for-profit corporation organized under Montana law.

> 2. This adversary proceeding is brought pursuant to Rule 7001(2), and (9), and 11 U.S.C. §§506(a)(1) and 547(b).

> 3. This Court has jurisdiction under 11 U.S.C.A. §§ 506(a)(1); 547 and 550 and 28 U.S.C. §§ 1334 and 157. This adversary proceeding is a core proceeding, under 28 U.S.C. §§ 157(b)(2)(A), (B), (F) and (K), arising under Title 11, U.S.C., and arising in the above-referenced case under Chapter 11, of the Bankruptcy Code, now pending in this Court.

> 4. On April 19, 2012, the Montana Twelfth Judicial District Court, Hill County, entered a judgment in favor of Defendant and against the Plaintiff/Debtor, in the amount of $290,780.75.

> 5. Plaintiff/ Debtor, Havre Aerie #166 Eagles, filed its Chapter 11 case, eight days later on April 27, 2012.

> 6. Defendant obtained her state court judgment within 90 days before the

---

[1]Trial of this adversary proceeding was held simultaneously with the hearing on confirmation of Debtor's Chapter 11 Plan.

filing of the Havre Eagle Club's Chapter 11 petition in this case on an otherwise unsecured debt for the sum of $290,780.75, which gave rise, at the time the judgment was entered, to a statutory judgment lien under Montana Code Annotated, § 25-9-301(2) against the Plaintiff/ Debtor's real property that constitutes the club house of the Plaintiff, Havre Eagles Club.

7. Groven's judicial lien (judgment lien) is a transfer (hereinafter the "Transfer") as defined by 11 U.S.C. § 101(54) made for or on account of an antecedent debt owed by the Plaintiff/ Debtor Havre Eagles Club before the transfer was made, as those terms are used in 11 U.S.C. §547(b).

8. The Transfer was made on or within 90 days before the date the Debtor's petition was filed.

9. The Transfer, i.e. Groven's judicial lien/ judgment lien, was to or for the benefit of a creditor, i.e. Defendant Groven.

10. That real estate is located at 202 First Street in Havre, Montana, which real estate is more particularly described as:

Lots 6, 7, 8, and 9, Block 8, Original Townsite of Havre, Montana, according to the official plat thereof on file and of record in the office of the
Clerk and Recorder of Havre, Hill County, Montana.

11. The fair valuation (fair market value) value of the Plaintiff' Debtor's real estate and building and real estate fixtures located thereon is $132,500, and the fair valuation of the Plaintiff/ Debtor's liquor license is $62,500. The parties incorporate the terms of their Stipulation Regarding Valuation of Debtor's Real Estate filed on November 13, 2012 as Docket # 17 by Plaintiff in the above-captioned adversary proceeding, Adv. No. 12-00027, as approved by this Court's Order entered November 13, 1012 as Docket # 18 in this adversary proceeding.

12. Plaintiff's aforementioned real property is encumbered by a first priority real estate trust indenture lien in favor of Independence Bank which secures a promissory note in favor of Independence Bank.

13. The balance of [sic] owing on the promissory note secured by a trust indenture against Debtor's real estate in favor of Independence Bank is $118,000 as established by the terms of the Stipulation for Treatment of Independence Bank's Secured Claim under Debtor's Chapter 11 Plan filed on November 16, 2012 as Docket # 70 in Plaintiff Debtor's underlying Chapter 11 case, Case No. 12-60679, as approved by this Court's Order entered November 16, 1012 as

3

Docket # 71 in the Chapter 11 case.

14. The judgment lien that arose by entry of the Defendant's judgment against Plaintiff is a second priority lien and is junior to the lien of trust indenture securing the claim of Independence Bank, which is secured by first priority lien against the Havre Eagles Club's real property.

15. The Transfer, i.e. Groven's judicial lien, is not, a type of transfer described in 11 U.S.C. §547(c). Subsection 547( c) has no applicability to this adversary proceeding.

In addition to the above-listed agreed facts, the Pretrial Order includes at pages 9-10 the

following Stipulations:

1. The fair valuation (fair market value) value of the Plaintiff' Debtor's real estate and building and real estate fixtures located thereon is $132,500, and the fair valuation of the Plaintiff/ Debtor's liquor license is $62,500. The parties incorporate the terms of their Stipulation Regarding Valuation of Debtor's Real Estate filed on November 13, 2012 as Docket # 17 in Plaintiff the above-caption adversary proceeding, Adv. No. 12-00027, as approved by this Court's Order entered November 13, 1012 as Docket # 18 in this adversary proceeding.

2. Defendant obtained her state court judgment within 90 days before the filing of the Havre Eagle Club's Chapter 11 petition in this case on an otherwise unsecured debt for the sum of $290,780.75, which gave rise, at the time the judgment was entered, to a statutory judgment lien under Montana Code Annotated, § 25-9-301(2) against the Plaintiff/ Debtor's real property that constitutes the club house of the Plaintiff, Havre Eagles Club.

3. Groven's judicial lien (judgment lien) is a transfer (hereinafter the "Transfer") as defined by 11 U.S.C. §101(54) made for or on account of an antecedent debt owed by the Plaintiff/ Debtor Havre Eagles Club before the transfer was made, as those terms are used in 11 U.S.C. §547(b).

4. The Transfer was to and for the benefit of Defendant Groven.

5. The Transfer was made on or within 90 days before the date the Debtor's petition was filed.

6. The Court's judgment in this adversary proceeding will govern the Plaintiff/Debtor's Objection to KayCee Groven's proof of claim. Havre Eagle's Objection to Groven's proof of claim (Claim No.2) was filed as Docket No. 62 in

4

Havre Eagles's Chapter 11 case.

Additional relevant facts are gleaned from the testimony and exhibits admitted at the trial. Farnham admitted in his testimony that, prior to entry of Groven's judgment, the administrative hearing officer concluded that he lacked credibility. On the other hand, the evidence shows that Debtor's balance sheets, financial statements, and bank accounts were reviewed on a regular basis by the Debtor's CPA Kato, who prepared the Debtor's tax returns. The Defendant failed to impeach Kato either with respect to his investigation, Kato's credibility, or his professional opinion.

Kato testified that he reviewed the Debtor's recent financial statements and balance sheets in order to give opinion testimony on whether the Debtor was rendered insolvent on the date of entry of Groven's judgment. Kato testified that he reviewed Ex. 4, the Havre Eagles Club's balance sheet comparison of years ending May 31, 2011, and May 31, 2012, and that he verified the numbers on Ex. 4, which came from Debtor's Quickbooks, by cross referencing the numbers with Debtor's bank statements.

Kato testified that he took the assets & liabilities from Ex. 4, and made adjustments in preparing Ex. 3, a balance sheet dated May 31, 2012, which shows revised balances after adding in Groven's judgment. Kato testified that Ex. 3 shows that as of May 31, 2012, the Debtor had total assets in the amount of $266,155.74, and total liabilities in the amount of $398,393.61, for a negative net asset in the amount of -$132,237.87.

Plaintiff's counsel asked Kato for his opinion on whether the Havre Eagles was insolvent on May 31, 2012, and Kato answered "Yes" based on the total liabilities being greater than the total assets. The Court asked how it could make a finding that Havre Eagles was insolvent on

5

April 19, 2012, when Groven's judgment was entered, instead of May 31, 2012.  Under direct examination by Debtor's attorney on that point Kato testified that in his opinion, based on his investigation, Havre Eagles Club was insolvent on April 19, 2012, if Groven's judgment is taken into account.  When asked on what basis he formed his opinion, Kato testified that the assets of Havre Eagles Club could not have been that much greater on April 19, 2012, nor could the assets have changed that much in the time period from April 19, 2012, to May 31, 2012, based on his investigation of the Debtor's financial records.  Under cross examination Kato testified that he was able, by reviewing the Debtor's bank statements, to verify if Havre Eagles Club spent money from April 19, 2012, to May 31, 2012.

On cross examination Groven's counsel asked Kato about Ex. 3 and the negative total net assets number of -$132,237.87 as of May 31, 2012.  Kato admitted that Ex. 3 does not show any value for the amount of the Debtor's personal property, other than $62,500 for the liquor license, and he admitted that if the value of Debtor's other personal property was included the shortfall in assets would be reduced.  After asking Kato about the asset values on Ex. 3 and Debtor's amended Schedules on Ex. 7, Groven's counsel asked Kato what was the approximate value of Havre Eagles' personal property excluding the liquor license and the DAD account.  Kato answered that the remaining value of Havre Eagles' personal property would be approximately $30,000, and that if that amount were added to Havre Eagles' total assets on Ex. 3 for May 31, 2012, the total assets would increase to $296,155.74.  On redirect examination by Debtor's attorney, Kato testified that increasing the total assets of Havre Eagles on April 19, 2012, by $30,000 to account for personal property would still result in its liabilities exceeding its assets.

Debtor's consultant Korkow testified that the liquidation value for the real property and

liquor license in a foreclosure or chapter 7 case should be expected at fifty percent (50%) of the fair market value, and that for the other assets he expected that in a foreclosure they would bring ten cents on the dollar.  Based on his discussion with real estate agents, Korkow testified that he agrees with the values as stated on the Debtor's liquidation analysis.  The liquidation analysis includes a fair market value for Debtor's assets in the total amount of $215,791, and a "liquidation value" of assets in the total amount of $105,297, including $66,250 for the real property.

## DISCUSSION

The Plaintiff/Debtor has the burden of proving the avoidability of transfers under § 547(b).  11 U.S.C. § 547(g).  Section 547(b) authorizes a trustee to avoid "any transfer of an interest of the debtor in property ...."  A debtor in possession has rights and duties of a trustee under 11 U.S.C. § 1107(a).  The Ninth Circuit explained as follows:

> The Bankruptcy Code permits a trustee to avoid any pre-bankruptcy transfer of a debtor's assets if the transfer: 1) is to or for the benefit of a creditor; 2) is for an antecedent debt owed by the debtor before the transfer; 3) is made while the debtor was insolvent; 4) is made within 90 days of the bankruptcy filing; and 5) enables the creditor to receive more than such creditor would have if the debtor liquidated and distributed the estate to all creditors 11 U.S.C. § 547(b)(1-5).

*In re Taylor,* 599 F.3d 880, 888 (9th Cir. 2010); *In re Food Catering & Housing, Inc.*, 971 F.2d 396, 397 (9th Cir. 1992); s*ee also In re Powerine Oil Co.*, 59 F.3d 969, 971-72 (9th Cir. 1995), *cert. denied*, *Koch Oil Co. v. Committee of Creditors Holding Unsecured Claims Against Powerine Oil Co.*, 516 U.S. 1140, 116 S.Ct. 973, 133 L.Ed.2d 893 (1996).

7

In *Barnhill v. Johnson*, 502 U.S. 393, 397, 400, 112 S.Ct. 1366, 118 L.Ed.2d 39 (1992), the United States Supreme Court construed "transfer"11 U.S.C. § 101(54)  to mean:

> "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

Section 547(e) provides further guidance on the meaning and dating of a transfer.  For purposes of § 547, it provides

[(e)(1)](B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(A)  at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within $10^2$ days after, such time;

(B)  at the time such transfer is perfected, if such transfer is perfected after such $10^3$ days . . . .

Our task, then, is to determine whether, under the definition of transfer provided by § 101(54), and supplemented by § 547(e), the transfer that the trustee seeks to avoid can be said to have occurred before November 20.

"What constitutes a transfer and when it is complete" is a matter of federal law.  *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369-370 (1945).  This is unsurprising since, as noted above, the statute itself provides a definition of "transfer."  But that definition in turn includes references to parting with "property and interest in property."  In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law.  *Id.*, at 370; *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").  Thus it is helpful to sketch briefly the rights and duties enjoyed under state law by each party to a

---

[2] The number of days was amended to 30 days in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[3] The number of days was amended to 30 days in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

8

check transaction.

* * * *

We acknowledge that § 101(54) adopts an expansive definition of transfer,
one that includes "every mode ... absolute or conditional ... of disposing of
or parting with property or with an interest in property.

*Barnhill v. Johnson*'s broad definition of "transfer" allows for the avoidance of judicial liens such as Groven's. *See, e.g.*, *In re Rhoads*, 130 B.R. 565, 568 (Bankr. C.D. Cal. 1991) (filing of an abstract of judgment within 90 days of a bankruptcy filing petition constitutes a transfer of property under § 547(b)); *Carter v. HCL Leasing Corporation (In re Martin)*, 87 B.R. 394, 396-97 (Bankr. E. D. N.C. 1988). While the Bankruptcy Code does not define "an interest of the debtor in property," the Supreme Court has interpreted the term to mean "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. I.R.S.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).

Several of the elements of § 547(b) are admitted in the agreed facts and stipulations listed in the Pretrial Order and quoted above. Agreed Fact 7 establishes that Groven's judicial lien is a transfer made for or on account of an antecedent debt owed by the Debtor before the transfer was made, satisfying § 547(b)(2). Agreed Fact 9 establishes that the transfer was to or for the benefit of a creditor, Groven, satisfying § 547(b)(1). Agreed Fact 8 establishes that the transfer was made within 90 days before the petition date, satisfying § 547(b)(4)(A). Groven does not contest those elements.

However, Groven contends that the Plaintiff failed to show that the transfer was made while the Debtor was insolvent under § 547(b)(3), and that the Plaintiff has failed to prove §

547(b)(5), i.e., that the transfer enabled the creditor to receive more than she would receive if the case were a case under chapter 7, the transfer had not been made, and the creditor received payment of such debt to the extent provided by the provisions of this title.

Turning first to the insolvency requirement, under § 547(b)(3) the Plaintiff must show that the Debtor was insolvent on the date the transfer were made or became insolvent as a result of such transfer.  *See, e.g., Wolkowitz v. Breath of Life Seventh Day Adventist Church (In re Lewis)*, 401 B.R. 431, 437 (Bankr. C.D. Cal. 2009).  A leading commentator has written:  "An entity is insolvent if its debts are greater than its assets, at a fair valuation, exclusive of property exempted or fraudulently transferred."  5 COLLIER ON BANKRUPTCY ¶ 547.03[5] n.96 (Alan N. Resnick & Henry J. Sommer eds., 16th ed., 2012) " (*quoting* H.R. Rep. No. 595, 95th Cong., 1st sess. 177, 312 (1977)).  Under the applicable "balance sheet" test debtors are insolvent when their liabilities exceed their assets.  *Lewis,* 401 B.R. at 437 n.9 (quoting *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. BAP 1989)).

Section 101(32) of the Bankruptcy Code defines "insolvent" to mean, with respect to individuals, "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of – (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title ...."  *Lewis*, 401 B.R. at 437.

Under § 547(f), the debtor is presumed to have been insolvent under § 547(b)(3) for the 90 days prior to filing for bankruptcy.  *Taylor*, 599 F.3d at 888.  Groven contends substantial doubt exists as to whether the Plaintiff was insolvent at the time the judgment lien was entered,

and that Farnham's lack of credibility and the flaws in the Debtor's information included in Groven's objection to confirmation has rebutted the presumption of insolvency. These contentions are attorney argument, and attorney argument is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994); *In re Nielsen*, 211 B.R. 19, 22 n.3 (8th Cir. BAP 1997) (Neither statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence).

Groven called no witnesses and offered no exhibits or other evidence to rebut the presumption under § 547(f) that the Debtor was insolvent during the 90 days preceding the date of the filing of the petition. Therefore the presumption is not rebutted. Farnham's lack of credibility is insufficient to rebut the presumption, because Kato is a professional who checked the Debtor's records and bank statements and rendered a professional opinion that the Debtor was insolvent on the date of Groven's judgment, supported by Ex. 3 and 4. Groven offered no evidence that Kato was not credible or which undermined his opinion, and did not show that Kato's insolvency opinion was incorrect even when $30,000 more in personal property assets were added back in to Ex. 3.

Kato answered the Court's query about timing when he testified that the bank statements showed no activity from the date of judgment to the petition date and beyond to May 31, 2012,

11

which would cause Kato to change his opinion that the Debtor was insolvent.  Kato also testified

that including another $30,000 worth of personal property would still result in the Debtor being

insolvent on the date the judgment was entered.  Based on the presumption of insolvency under §

547(f), Kato's testimony, and Ex. 3 and 4, and absence of any evidence to the contrary offered by

Groven, the Court finds and concludes that Plaintiff satisfied its burden under § 547(b)(3) to

show that the Debtor was insolvent or became insolvent as a result of such transfer.  *Lewis*, 401

B.R. at 437.

The fifth element requires that the Plaintiff show that the transfer enabled the creditor to

receive more than she would have if the transfer had not been made, the case were a case under

chapter 7, and Groven received payment of her debt to the extent provided under the Bankruptcy

Code.  § 547(b)(5).  In the Pretrial Order Groven stipulated that her debt is an otherwise

unsecured debt without the transfer.  Thus, in a Chapter 7 liquidation case, if the judgment had

not been entered, Groven would be entitled to receive a *pro rata* share of any distribution with

the other unsecured nonpriority creditors.  Instead, as a result of the transfer/judgment Groven

received more than she would have received had the transfer not been made because of her

judicial lien is a second lien on property which the parties stipulate is partially secured according

to the fair market value.

Agreed facts 11, 12, 13 and 14, and Stipulation 1 on page 9 of the Pretrial Order,

establish that (1) the fair market value of the Debtor's real estate is $132,500; (2) Independence

Bank has a first priority lien in the amount of $118,000; (3) Groven has a second priority lien as a

result of her judgment.  These facts and stipulations show that Independence Bank is fully

secured, and that there is approximately $14,500 in equity partially securing Groven's lien.

12

If the transfer/judgment to Groven had not been made, in a chapter 7 case the trustee, pursuant to his or her duties under 11 U.S.C. § 704(a)(1), is required to collect and reduce to money the property of the estate.  Korkow testified that the liquidation value of the real estate would be only $66,250, but that opinion ignores what actually would happen in a chapter 7 case.

Unless the trustee learned upon investigation that he or she could sell the real property for more than the amount of Independence Bank's lien, with the aim to distribute the net proceeds after paying the Bank's claim to unsecured creditors *pro rata,* the trustee would either abandon the property as of inconsequential value or benefit to the estate, or the trustee would stand aside and permit the Bank to modify the stay and liquidate the property.  A trustee simply would not go through the time and expense selling the real property for the sum of $66,250, because that would expend time and resources with no benefit to the estate.  If the trustee could sell the real property for the fair market value of $132,500, the trustee would make the sale, pay off Independence Bank, and Groven would share in the distribution of the remaining equity *pro rata*[4].

By contrast, Groven's judgment enables her the opportunity to receive more than the distribution she would have to share *pro rata* with other unsecured creditors in a chapter 7 case. Including her second priority lien resulting from the judgment, the Debtor's real estate is underwater and a hypothetical chapter 7 trustee would either abandon the property or allow the stay to be lifted because no equity exists to administer.  Independence Bank likely would proceed to seek foreclosure and a sheriff's sale.  However, the evidence shows there is $14,500 in equity

---

[4]Because of the size of Groven's claim her *pro rata* share likely would be larger than that of other unsecured nonpriority claims.

13

in excess of Independence Bank's claim.  Groven's judgment enables her to receive more than she would in a chapter 7 case because she has the opportunity, right and the incentive to bid at a sheriff's sale up to the fair market value of $132,500.  In all likelihood Independence Bank would stop bidding when the bid was high enough to satisfy its $118,000 claim plus some amount for fees and costs, leaving Groven as the successful purchaser of the real property which has equity which, because of her judgment, she would not have to share *pro rata* with unsecured creditors[5]. Based on the equity shown by the agreed facts and stipulations, the Court finds and concludes that the Plaintiff has satisfied its burden of proof and met all the requirements of § 547(b) to avoid the transfer.  See, *Taylor*, 599 F.3d at 888-89.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2.  This is a core proceeding to determine to determine, avoid and recover a preference 28 U.S.C. § 157(b)(2)(F).

3.  The Plaintiff has satisfied his burden under 11 U.S.C. § 547(g) of proving the avoidability of the transfer consisting of the judgment entered in Defendant's favor on April 19, 2012.

**IT IS ORDERED** a separate Order and Judgment shall be entered against the Defendant Kaycee Groven, in favor of the Plaintiff Havre Aerie #166 Eagles, providing that Groven's judicial lien arising from judgment against the Plaintiff entered in the Montana Twelfth Judicial

---

[5]If other parties appeared at the sheriff's sale and engaged in a contested bidding process, the higher the bid the more Groven would receive in payment of her judgment secured by second lien.

District Court, Hill County, on April 19, 2012, is avoided under 11 U.S.C. § 547(b) and is of no

further legal force or effect, and Groven's claim shall be allowed as an unsecured nonpriority

claim.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana